CHAMBERLAIN, Adm'r. *de bonis non, versus* BATES, Adm'r.

An administrator *de bonis non*, cannot sustain an action at law, against the representatives of a former administrator, to recover money received by the latter, in the course of a partial administration, and not accounted for, or paid over.

The authority of an administrator, *de bonis non*, embraces only such of the personalty of the first decedent, as remains *unadministered, i. e. in specie, unaltered or unconverted* by his predecessor.

This case was tried in the Circuit Court of Mobile. Chamberlain administrator *de bonis non*, of the estate of one Negus, left unadministered by James P. Bates his former representative; declared in assumpsit against the defendant, administrator of Bates, to recover a sum of money alleged to have been received by the latter, while the administrator of Negus, and which had never been accounted for, or paid over. On demurrer by the defendant, the Court held the

demurrer well taken, and rendered judgment in favor of the defendant; when, by writ of error, the case came to this Court.

The only principle raised here, was as to the authority of an administrator, *de bonis non*, to sue for assets received and converted by the former deceased representative of his intestate.

By Mr. Chief-Justice SAFFOLD :

The action was *assumpsit*, brought by Chamberlain as administrator *de bonis non* of the estate of Negus, to recover of the defendant as administrator of James P. Bates, the former administrator of said Negus, a sum of money received by the latter in the course of his partial administration of said estate, and which he had failed to pay over, or otherwise to account for.

To the declaration, to this effect, was filed a general demurrer, on which the Court gave judgment for the defendant.

This judgment on demurrer is assigned as erroneous, and is the only question for revision.

This question is now for the first time presented for the consideration of this Court : it is not unimportant in principle, nor entirely free from difficulty. Yet as the argument has been brief, and *ex parte*, I will but concisely investigate a few of the prominent points necessarily involved.

The principle is sufficiently clear, that an executor or administrator, during the progress of the administration, is directly responsible to creditors, to the extent of assets received; and ultimately to the legatees or distributees for any residuum of the personalty; and consequently after the death of an executor or administrator, his executor or administrator is

in like manner responsible if all the assets have been actually *converted* by the former, so as to leave no authority for the appointment of an administrator *de bonis non.* I do not understand these principles to be contested on this occasion; but it is insisted, that where the executor or administrator dies pending the administration, leaving goods, chattels, &c. *unadministered*, and an administrator *de bonis non* has been appointed, the representatives of the former are responsible, not to the creditors, or others interested in the estate, but to the successor in the same trust. An argument used to sustain this principle is, that, in this State, unlike the law of England, all debts are of equal degree, except some unimportant privileged charges; and that in case of insolvency, (as may be the situation of this estate,) the executor or administrator, must exhibit to the County Court the amount of all claims and assets, and represent the estate insolvent, to the end that ratable dividends may be ascertained and paid over, by order of the Court; that where the first *executor* or *administrator*, has died or resigned, it is impracticable to adjust the estate, according to our system, unless his representatives be held responsible to the administrator *de bonis non.*

To this argument, perhaps a sufficient answer would be, that a change of the law in one respect, which merely creates the necessity of a corresponding change in another, can not of itself produce the latter effect, though injury or inconvenience should result from the incongruity. But I do not perceive any increased difficulty from the adoption of our system, even in cases of insolvency, to which only the argument applies. It is the duty of the executor or administrator, in all cases, to ascertain the condition of the estate within a reasonable time, and if there be a

deficiency of assets to pay all the debts, to represent the facts to the County Court, and have the estate declared insolvent. If he use the necessary precaution to make no undue appropriation of the funds, he can generally do so under either system. Nor do I discover that the difficulty is greater under our equality of debts, than in England, where the different degrees are allowed. If an executor or administrator under laws recognising priority of debts, pay one of inferior degree, leaving others of superior, unprovided for, he is considered as having made the payment in his own wrong, and is no less chargeable with the latter. In like manner, if one under our law of equality, where there is a deficiency of assets, pay all, or a larger proportion of any debt, than the rateable proportion, he must be considered as having paid so much in his own wrong, and on that account is not the less responsible to other claimants. But it does not follow, from any of these views of the subject, that it is not the duty of the first executor or administrator, or in case of failure of the administrator, *de bonis non*, if the estate be insolvent, to cause it to be so declared as early as practicable, and then, with the aid of the Court and commissioners, to cause it to be finally closed, pursuant to our statute regulations. Nor does it necessarily result from the nature of the proceedure, that this settlement, though arising on the report of insolvency by an *administrator, de bonis non*, might not equally embrace all the accounts of the first administrator or executor, so as to extend to his representatives the same exemption from suits, that in such case, is provided for the administrator causing the declaration of insolvency ; except as to judgments previously obtained against him, which, like

payments made, imply an admission of sufficient as-
sets.

The plaintiff, in support of his right of action, re-
lies, as authority, upon a decision of the Supreme
Court of Massachusetts, where, as he suggests, the
statute provides *pro rata* payments in case of insol-
vency, in a manner similar to ours. It is the case
of *Jewett* vs. *Jewett, adm'x.*[a] It is true, that the re-
marks of Chief Justice *Parsons*, who delivered the
opinion of the Court, afford some countenance to the
principles insisted on in support of this action; but
that case was essentially different from this, and the
question originated out of an act of the Probate Court,
in removing an administratrix from the trust, pending
an action against her by a creditor of the intestate,
which removal was by authority of a statute of that
State, the special provisions of which, or how far they
may have influenced the decision, do not appear.
The want of assets, and this removal, were plead as
matter of defence, and on demurrer, the plea was
sustained. In giving the opinion, the *Chief Justice*
remarked, that if the defendant had assets, she must
account for them with, and pay them over to the suc-
ceeding administrator. But in support of this posi-
tion he cited no authority. And in conclusion, he
said, that considering the manner in which the assets
of the deceased were appropriated by their law, the
Court were of opinion the plaintiff could no longer
sustain his action. He had, however, previously ad-
mitted, that, at *Common Law*, the defendant might
retain sufficient assets for the payment of the debt
against the subsequent administrator; but he pro-
ceeded on the principle, that the Common Law mode
of marshalling the assets for the payment of debts,
according to their degrees of priority, may have giv-

en a sanction to the retainer, which their statutes did not. Whatever may be the correct rule of decision respecting the right of a *removed* administrator to retain assets in such case, especially under the statute of that State, I think it may be safely assumed, that according to the Common Law, remaining unimpaired in this State, the representatives of a deceased executor or administrator may here retain a sufficiency of the *converted* assets, to satisfy all demands which were chargeable against the latter, in the fiduciary capacity during the continuance of the trust. The law and the reason may be different in the case of *removal,* which implies direliction of duty, and a consequent necessity for prompt settlement.

Such is the spirit of our statute on this subject, which has also been referred to in support of this action. It authorises the Orphan's Court, where administration has been granted on insufficient security, to require other that is sufficient: also where any administrator has embezzled, wasted, or misapplied, all, or any of the decedents, estate, or shall refuse or neglect to give bond with security as aforesaid, to forthwith revoke or repeal the letters of administration, and grant others to such person, entitled thereto, as will give the requisite bond. The subsequent administrator "may have actions of Trover, detinue, account, and on the case, for such goods or chattels as came to the possession of the former administrator, and were withheld, wasted, embezzled, detained or misapplied, by any of them, and no satisfaction made for the same." By this I would understand, that authority is given to the new administrator, immediately, to institute either, or all the actions mentioned, that may be most appropriate for any misconduct, or either of the wrongs therein specified. It is

justly to be inferred that the Legislature, by expressly prescribing these remedies, intended to confer on the subsequent administrator, more extensive powers than by the Common Law, are incident to administrators *de bonis non;* otherwise it would have been sufficient merely to have authorised the removal, and the subsequent appointment.

On the part of the defendant has been cited the case of *Coleman, adm.* v. *McMurdo, et al.*[a] The action was by an administrator *de bonis non,* against the representatives of the former administrator, as is the case before us. The President of the Court being absent, the other Judges gave their opinions *seriatim,* at great length, and after full discussion. The decision denied the right of action, *Judge Coalter* alone dissenting. He also inclined to admit that the Common Law was against the right of action, but contended for the right *in Virginia,* on the ground of long usage, and the operation of statutes in that State, which the majority of the Court determined to have been repealed.

Judge *Carr* adopts the principle, that, if an executor dies intestate, only the personal estate, *the property whereof is not altered,* shall go to the administrator *de bonis non,* and not to the next of kin of the executor; because from the time the executor dies intestate, the first testator dies intestate also, and it was the executors own fault that he did not, as he might, alter the property.[b] Again, "that every thing is unadministered, which has not been reduced into actual possession, and converted by the administrator :" also, "that an administrator *de bonis non,* is entitled to all the goods and personal estate, such as terms for years, household goods &c., which remain *in specie,* and *were not administered* by the first ad-

[a] 5 Rand. R. 51

[b] 2 P. Wms. 210, 340.

ministrator : as also debts due the intestate." Such
is found to be the doctrine of the Common Law.[a]
From these principles it results, that the authority
of an administrator *de bonis non*, embraces only such
of the personalty of the first decedent as remains *un-*
*administered*, i. e. *in specie, unaltered* or *unconverted*
by his predecessor. Hence it is, that the letters or
commission of an administrator *de bonis non* is held
to extend, as his title imports, to the *unadministered*
assets alone, and so far only is one in that capacity to
be regarded a trustee for distributees, and representa-
tives of the testator or intestate. In the Virginia
case cited, Judge *Greene* remarks, that, "No case has
ever occurred in England, in which an administrator
*de bonis non* has ever asserted a claim against the
representatives of a deceased executor or administra-
tor, at law or in equity, for an account of the assets
wasted or converted to his own use, by the executor
or administrator ; and consequently no adjudged case
is to be found expressly affirming or denying the pro-
priety of such a claim." He also draws what ap-
pears to be the just and necessary disintction be-
tween an administrator *de bonis non,* and a tempora-
ry administrator commissioned to act during the *mi-*
*nority, absence* &c., of the person entitled to the gen-
eral trust ; a distinction which the agument of the
plaintiffs counsel in this case would have the effect
to destroy. He says the commission of an adminis-
trator *de bonis non* gives him only the goods *not ad-*
*ministered ;* " whilst in cases of an infant, executor
or administrator, or where one entitled to administra-
tion, or as executor, is absent, or is obstructed by a
pending suit ; whenever the impediment is removed,
a general probate or administration is granted to him
for the whole estate, and the administration is grant-

[a] Bac. Ab. title ex'rs & admrs and Tangry *v.* Brown, 1 Bos. & Pul. 310.

ed in the mean while to the administrator *durante minori œtate or durante absentia, or pendente lite*, for the use of the executor or administrator, to whom a general probate or administration may afterwards be committed. They are only the bailees of such general executor or administrator, and therefore responsible to them." So, if administration be granted to an improper person, or by an improper Court, and afterwards revoked, the subsequent administrator properly appointed, has a general commission of the administration, and is thereby entitled to call the displaced administrator to account, as in case of an executor *de son tort.*

11 Vin. Ab. 117, pl. 4.

In the case of an executor or administrator, who has, for misconduct, been removed from the trust, I have already conceded that the reason, and at least our statute laws, are different; that, in such case, to a greater extent, the unfaithful or incompetent trustee may be called to an immediate account by the administrator *de bonis non*, who has been deemed more worthy the trust; that though this transfer of the assets or interest effects nothing towards the final settlement of the estate, except to render it more secure, this object alone may be a sufficient inducement for the change. Where, however, the necessity for the new appointment originates in no complaint, or distrust of the former trustee, but as a consequence of his death, no such danger is to be presumed. This being the case before us, the statute referred to, does not apply to it; nor am I convinced that all our statute regulations concerning the settlement of estates have materially changed the *policy* in respect to the question presented; if they have, the authority of the Legislature must be revoked to change the *remedy*: the judiciary is incompetent.

An other view of the subject presented by Judge *Greene*, in the case cited, is not inapplicable to our system, and tends farther to reconcile even the policy of limiting the authority of administrators *de bonis non*, as above proposed. Under this rule of practice, he says, the creditors have an immediate remedy against the executor or administrator of the predecessor, in which it is only necessary to prove a waste, or conversion, to an amount sufficient to satisfy the demand, and not to settle accurately the accounts of the administration; and without the intervention of the *administrator de bonis non*, all creditors to the extent of the fund in question, would be secured by bonds given by the legatees to the executor or administrator of the executor or administrator, to indemnify him against debts of the first testator, which may appear and be recovered against him. He alone being responsible to the creditors for the fund for which his testator or intestate was responsible, he is the proper and only proper person to whom those bonds should be given; whereas, if the administrator *de bonis non*, has a right to recover this fund, it will be burthened with two commissions instead of one, or even more than two, if there be several successive administrators *de bonis non*. The creditors would be delayed until after a tedious litigation; the accounts of the first executor or administrator were finally settled in the suit of the administrator *de bonis non*, and he had been enabled to coerce the payment of the money, and their rights would be varied as aforesaid. They might be farther delayed by the necessity of a suit against the administrator *de bonis non;* and so the legatees and distributees would also be delayed, not only by the first suit by the administrator *de bonis non*, but by their suit against him for a settlement of

his accounts; and the hazard of loss to creditors, legatees and distributees, would be doubled, trebled or quadrupled, according as there were one or more successive administrators *de bonis non*, from the possible, and indeed common insolvency of executors and administrators, and their securities.

The opinions of the majority of the Court, in the case cited of *Coleman, adm.* v. *McMurdo*, resulted in the conclusion, that, an administrator *de bonis non*, can not sue the representative of a former executor or administrator, either at law or in equity, for assets wasted or converted by the first executor or administrator; but such suit may be brought directly by creditors, legatees or distributees.

The opinion of this Court sustains the same principle, in reference to the Common Law and statutes of this State.

The judgment of the Circuit Court must therefore be affirmed.